IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

v.

ZIDRE CEPHAS.

Criminal Action No. 18-19-RGA

MEMORANDUM ORDER

Defendant Zidre Cephas is facing gun charges after police performed a search incident to a *Terry* stop. The pedestrian stop was initiated based upon a confidential tip provided to Officer McNulty of the Wilmington Police Department. Defendant has moved to suppress the evidence obtained during this search. (D.I. 19). Defendant argues that he was improperly seized because the officers did not have the requisite reasonable suspicion to perform a *Terry* stop. (*Id.* at 3). Therefore, Defendant requests that all evidence obtained by the search be suppressed, as the evidence was illegally seized. (*Id.*).

Defendant argues that (1) his seizure occurred when Wilmington police officers asked him for and retained his identification to search for warrants and (2) the officers did not have the requisite reasonable suspicion to seize him. (*Id.* at 3, 5). Specifically, Defendant challenges the content and credibility of the tip received by Ofc. McNulty as insufficient to give rise to reasonable suspicion that would support the stop, seizure, and search of Defendant. (*Id.* at 5; D.I. 29).

The Court need not determine whether Defendant was seized at the initiation of the pedestrian stop when Corporal Tynes asked for Defendant's identification or later, when Cpl. Tynes physically restrained Defendant by placing him in handcuffs. At either time, the officers

1

had reasonable suspicion to make the stop. Police officers are permitted to conduct brief investigatory stops when they have a reasonable and articulable suspicion that crime is afoot. *Illinois v. Wardlaw*, 528 U.S. 119 (2000); *Terry v. Ohio*, 392 U.S. 1 (1968). The officer "must be able to articulate more than an 'inchoate and unparticularized suspicion or 'hunch' of criminal activity.'" *United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000) (quoting *Wardlaw*, 528 U.S. at 123-24). The Supreme Court has held,

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White*, 496 U.S. 325, 330 (1990). An anonymous tip may provide reasonable suspicion for an investigative stop if it satisfies a totality of the circumstances test. *Id.* at 331.

Defendant argues that the "anonymous" tip to Ofc. McNulty could not give rise to reasonable suspicion for the stop because (1) the tip did not assert criminal activity (D.I. 29 at 3), (2) the tipster did not provide his basis of knowledge (*id.* at 5), (3) the tip did not provide sufficient identity information (*id.* at 7), (4) the police did not observe any suspicious or illegal activity (*id.* at 8), and (5) the tip and the tipster were unreliable (*id.* at 12).[1] These contentions will be addressed in three groups: (1) challenges to the content of the tip, (2) challenges to the corroboration of the tip, and (3) the reliability of the tip.

Defendant argues that the contents of the tip could not give rise to reasonable suspicion. The tip provided the following information: (1) a location—the corner of 6th and Jefferson; (2) information for identification—two black males, one wearing blue jeans and a gray shirt and the

---

[1] Defendant's pre-hearing submission refers to the tip as "anonymous." (D.I. 19 at 1, 5). The testimony at the hearing made clear that the informant was known to Ofc. McNulty, and thus the tip was not anonymous. (D.I. 32 at 14:11-15:1).

2

other wearing a white shirt and white shorts; and (3) an allegation of criminal activity—drug possession. (D.I. 32 at 14:7-10; Ex. 4).

First, Defendant argues that the tipster's statement that one of the men had drugs on him was not sufficient to allege criminal activity because not all marijuana possession is illegal. (D.I. 29 at 3-4 (citing Del. Code Ann. tit. 16, §§ 4764(c), 4904A(a)(4) (2015))). However, these statutes specifically state that "[n]othing herein shall be construed to repeal or modify any law or procedure regarding search and seizure." Del. Code Ann. tit. 16 § 4764(h). Moreover, possession of more than a "personal use" quantity is still an unclassified misdemeanor under Delaware law. *Id.* § 4764(b). An allegation of drug possession therefore may give rise to reasonable suspicion that criminal activity is occurring.[2]

Second, Defendant argues that the tip is deficient because it did not provide the tipster's basis of knowledge. (D.I. 29 at 5). It is clear from the record that the tipster did not provide his basis of knowledge. (D.I. 32 at 26:11-13). While this factor may weigh against a finding of reasonable suspicion, this single factor is not dispositive on its own.

Third, Defendant alleges that the tip did not contain sufficient identifying information to give the officers reasonable suspicion to stop him. (D.I. 29 at 6-7). Defendant argues that the fact that one out of four clothing items did not match the description in the tip and the lack of other identifying information defeats reasonable suspicion. Defendant places significant emphasis on the lack of other identifying information in the tip. (*Id.* at 7). However, Defendant discounts the following in arriving at this conclusion: (1) the location information provided, (2) that Defendant and his companion were the only two people at the intersection when the officers

---

[2] Marijuana possession is a misdemeanor under federal law. *See* 21 U.S.C. § 844.

3

arrived shortly after the tip was first reported, and (3) that three out of the four items of clothing matched. (D.I. 32 at 14:7-10, 95:5-22).

Fourth, Defendant argues that the officers who arrived on the scene did not see any suspicious or illegal activity. Specifically, Defendant points to the officers' failure to wait and observe possible illegal activity and the fact that Defendant and his companion did not immediately flee when the officers arrived. (D.I. 29 at 9; D.I. 32 at 63:7-9). However, given the nature of the criminal activity the tip reported—drug possession, not sale or use—it was unlikely that officers would observe behavior indicating illegal activity. (*See also* D.I. 32 at 69:11-21). Moreover, as discussed above, the Court must look at the totality of the circumstances. Here, the officers were able to corroborate the identifying information provided by the tipster upon their arrival to the scene.

Finally, Defendant argues that the tip and tipster were not reliable. Defendant points to the tipster's own criminal history and argues that the tipster would not have been held accountable if the tip turned out to be false. (D.I. 29 at 14-15). To assess the reliability of an informant's tip, courts must look at the totality of the circumstances, including the following factors: (1) whether the officer can assess the informer's credibility; (2) whether the informer can be held responsible if the allegations are untrue; (3) whether the information would not be available to the ordinary observer; (4) whether the informer recently witnessed the criminal activity at issue; and (5) whether the information accurately predicts future activity. *United States v. Johnson*, 592 F.3d 442, 449 (3d Cir. 2010); *see also United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002) (giving great weight to use of a private police line in assessing totality of circumstances).

Here, the first two factors weigh in favor of the tip's reliability. Ofc. McNulty testified that the initial tip was provided by a community member who was known to her, that she knew his full name, knew members of his family, and knew where he lived. (D.I. 32 at 14:11-15:1). She also testified that previous tips from the tipster had been credible in the past. (*Id.* at 15:13-21). Moreover, though the initial tip was a text message to Ofc. McNulty's work phone, she called the tipster to confirm the information. (*Id.* at 13:18-21). Though not a "face to face" interaction, this phone call allowed Ofc. McNulty to further assess the tipster's credibility. Given these facts, the tip and the tipster have significant indicators of reliability and credibility. Moreover, the Court does not believe that the tipster's criminal history should outweigh Ofc. McNulty's personal experience with the tipster.

The remaining factors do not outweigh these indications of reliability. The third factor is neutral. Drug possession is not by its nature criminal activity which may be observed by the ordinary observer. The fourth factor, on balance, is neutral. On the one hand, the tipster did not state the basis for his or her knowledge, as previously discussed. However, the record does support a conclusion that the tipster framed this as an immediate crime. That is how Ofc. McNulty responded to the tip. She called another officer in the area to relay the information, and once she was allowed to leave the community event she was attending, proceeded to the location of the tip. (*Id.* at 13:21-23, 17:1-8). Finally, the fifth factor weighs slightly against reliability. As the Government notes, there was no future behavior to predict beyond Defendant's continued possession of drugs. (D.I. 30 at 4). Therefore, the Court finds the tip reliable and that under the totality of the circumstances test, the tip gave rise to sufficient reasonable suspicion for Cpl. Tynes to perform a brief investigatory stop of Defendant and his companion.

5

If the stop did not begin until Cpl. Tynes handcuffed Defendant, the evidence in support of a finding of reasonable suspicion is even stronger. Upon interaction with Cpl. Tynes, Defendant repeatedly attempted to get up and enter the home without his driver's license. This behavior, as Cpl. Tynes testified, was extremely odd in his experience and made him suspicious that Defendant was attempting to flee or discard evidence. (D.I. 32 at 43:7-20, 44:2-5; D.I. 30 at 4). Moreover, Defendant repeatedly failed to comply with Cpl. Tynes' instructions to stay seated while he ran Defendant's identification. Therefore, if the stop did not occur until Cpl. Tynes placed Defendant in handcuffs, there was sufficient reasonable suspicion to seize Defendant at that time.

For these reasons, IT IS HEREBY ORDERED that the motion (D.I. 19) is **DENIED.**

Entered this 7 day of December, 2018.

*Richard G. Andrews*
United States District Judge